# Johnson *v.* Wanamaker, Appellant.

*Contract—Quantum meruit—Architect's plans—Contradiction of testimony.*

The law implies a promise to pay what services are worth, when they are upon request performed and the parties have not expressly agreed upon a rate of compensation, but if the amount of compensation has been agreed upon, or a rule adopted by which it is to be ascertained, the law lets the contract stand as the parties have made it.

When the evidence is contradictory as to whether the parties have agreed upon the compensation which is to be paid for services, or for goods sold and delivered, there is no presumption of law that the contract as made was not complete in all its terms. The truth is to be determined from the evidence produced as in any other disputed question of fact. The burden is upon the plaintiff to establish by a preponderance of evidence the facts from which the law will infer a promise by the defendant to pay what the services are worth. If such facts are not so established, the plaintiff is not entitled to recover.

In an action to recover for plans furnished for a building where the plaintiff testifies that he was to be paid for his work at such a rate of compensation as his services as an architect were worth, and the defendant testifies positively that the terms of the employment were distinctly agreed upon, and there is no other testimony, a referee cannot avoid passing upon the veracity of the witnesses by deciding in favor of the plaintiff on the theory that on the evidence as it stood a presumption arose in favor of the plaintiff that he was to be paid for what his services were worth, unless the defendant showed by a preponderance of the evidence there was a special agreement that he was to take less for his work, or be compensated in some unusual way.

*Contract—Damages—Architect's plans.*

In an action by an architect to recover for plans furnished for a building, where the referee finds as a fact that the plans are incomplete and defective, it is error to take as the basis for ascertaining the value of the plaintiff's services the amount which the plans would have been worth if they had been skilfully prepared and complete, and deduct from said amount what it would cost to complete the plans and remedy the defects which they contained. If the plan is so defective as not to meet the requirements of the purpose for which it was intended, it may be utterly worthless.

When an architect undertakes to prepare the plans for a large and expensive structure he covenants not only that he is possessed of the requisite skill, but that that skill shall be exercised in the work which he has undertaken.

Argued Oct. 11, 1900.   Appeal, No. 38, Oct. T., 1900, by

defendant, from order of C. P. No. 2, Phila. Co., June T., 1895, No. 423, overruling exceptions to referee's report in case of Lindley Johnson v. John Wanamaker. Before RICE, P. J., BEAVER, ORLADY, W. W. PORTER and W. D. PORTER, JJ. Reversed.

Assumpsit by an architect to recover the value of plans furnished for a building.

The case was referred to Charles Biddle, Esq., as referee.

From the referee's report it appears that the plaintiff claimed to recover $5,299.74 for certain plans for a warehouse, which he prepared in pursuance of a contract with Thomas B. Wanamaker, agent of John Wanamaker, the defendant. This claim was based on a quantum meruit. Thomas B. Wanamaker testified that it was agreed that the plaintiff should have $500 for the plans, and that this sum had been paid to him. Plaintiff admitted that he had received the $500, but testified that he considered that it was merely a payment on account. Other facts appeared by the opinion of the Superior Court.

The referee in his final report found in favor of the plaintiff for the sum of $1,500. Exceptions to the report were dismissed, and judgment was entered in favor of the plaintiff for $1,500.

*Errors assigned* were in overruling exceptions to referee's report.

*P. F. Rothermel,* with him *William L. Nevin,* for appellant.— The burden of proof was on the plaintiff: Scott v. Wood, 81 Cal. 398; Phipps v. Mahon, 141 Mass. 471.

The plaintiff cannot recover because he has broken his implied contract to employ, in preparing the plans, such skill as is requisite to enable him to prepare the plans in a skilful and workmanlike manner: Schreiner v. Miller, 67 Iowa, 91; Shipman v. The State, 43 Wis. 381; Waugh v. Shunk, 20 Pa. 130; Wade v. Haycock, 25 Pa. 382.

It is clear that what the plaintiff is entitled to recover is only the value of the services which he has rendered.

But even if the plaintiff can recover and the measure of damages is two per cent on the cost of the building, less a deduction because the plans are defective, it is very clear, under the

301, (1901).]          Arguments—Opinion of the Court.

evidence, that the $500 the plaintiff has already received are all, if not more, than the plans, by reason of their defects, are worth.

*J. Percy Keating* and *John G. Johnson*, for appellee.—Even were we to admit that defendant's testimony, viewed in the light of the surrounding circumstances, is of equal credibility with that of plaintiff, the preponderance of evidence is still with plaintiff, inasmuch as he has met defendant's evidence with counter evidence: Gabhart v. Francis, 32 Pa. 78; Sanns v. Neal, 52 Ohio, 56; Abrath v. North Eastern Ry. Co., 32 W. R. 50; Starratt v. Mullen, 148 Mass. 570; Delano v. Bartlett, 6 Cush. 364; Graves v. Colwell, 90 Ill. 612; Chase's Stephen's Digest of Evidence, art. 95.

No one can doubt that if the services constitute a fair and reasonable compliance with the purpose of the employment, plaintiff is entitled to their full value; and inasmuch as labor and money are not essentially convertible terms, recourse must be had, in valuing the services, to the price usually paid by the public for like services: Stanton v. Embrey, 93 U. S. 557.

OPINION BY W. D. PORTER, J., July 25, 1901:

This is an action of assumpsit on a quantum meruit, and was tried before a referee. The plaintiff who was an architect was employed by the agent of the defendant to furnish plans for a building, which the defendant proposed to erect; the plans were furnished, but the undertaking was abandoned. The specifications of error may be divided into and considered under two heads: first, such as go to the terms of the contract between the parties, and the manner in which those terms were by the referee ascertained; second, such as involved the manner in which the referee arrived at the value of the services in question.

The testimony as to the terms of the employment is correctly summarized by the referee, as follows: " The testimony of the plaintiff and Mr. Thos. B. Wanamaker, the agent of defendant, the two persons who alone knew anything about the transaction, is directly contradictory as to the terms of employment, but as to the employment itself there is no dispute. The plaintiff testified that when he was employed no terms whatever were

mentioned, and it was understood that he would be paid for his work at such a rate of compensation as his services as an architect were worth. Mr. Thos. B. Wanamaker, on the other hand, testifies positively that the terms of the employment were distinctly agreed upon." Here was an irreconcilable conflict of testimony as to a material fact, which was at the foundation of the case. It was admitted that if the testimony of the agent of the defendant was true, and there was an express contract, that contract had been performed and the plaintiff paid according to its terms. If the facts were as testified to by the plaintiff, the law implied therefrom a promise by the defendant to pay him what his services were reasonably worth. The order in which the testimony was introduced does not affect the question involved. The plaintiff in his case in chief testified that he had been directed by the agent of the defendant to prepare the plans, that he had prepared them and delivered them to the agent, and then offered evidence as to what the services were worth. The agent of the defendant testified as to what occurred at the time of the employment, giving the terms of an express contract which fixed the manner in which the plaintiff was to be compensated. The plaintiff when called in rebuttal denied that any such express contract had been made. The defense was not affirmative in its nature, it savored not of confession and avoidance, but was a denial that the employment was of the character testified to by the plaintiff. The burden was upon the plaintiff, it was for him to establish by the weight of the evidence the facts from which the law would imply a promise by the defendant to pay him what his services were worth. The duty which confronted the learned referee at the threshold of his inquiry was an unpleasant one ; it was for him to determine which one of these two witnesses gave the correct version of what occurred at the time of the employment. This does not imply that it was absolutely essential that he should find that one of the witnesses was guilty of an intentional departure from the truth, the contradiction may have resulted from an honest lapse of memory in one or other of the parties. It was proper for the referee to consider all the facts and circumstances which tended to throw light upon the disputed question, whether the testimony of the parties respectively contained inherent evidence of its own improbability, or was contrary

to the suggestions of universal experience. After consider-
ing all these things, he was bound to face the disagreeable
proposition, and determine which testimony was entitled to
credit. The referee sought a way of escape from the dilemma,
and advances this theory in explanation of his failure to deter-
mine the disputed question of fact: " It is admitted that the
defendant employed the plaintiff to make the plans and specifi-
cations ; such being the case, a legal presumption at once arises
as Blackstone puts it : ' If I employ a person to transact any busi-
ness for me, or perform any work, the law implies that I under-
took or assumed to pay him so much as his labor deserved.'
Mr. Johnson's claim is, therefore, supported by this legal pre-
sumption, and if his testimony is entitled to equal credit with
that of Mr. Wanamaker, the weight of the evidence is in his
favor, and your referee must hold that when a man establishes
that he has been employed, he is to be paid in the regular way,
and proper compensation for his services, unless, by preponder-
ance of proof, it is shown that he agreed for some reason or by
virtue of some special contract to take less or be compensated
in some unusual way. The question, therefore, to be deter-
mined is whether Mr. Johnson's testimony is entitled to receive
as much credit as that of Mr. Thos. B. Wanamaker." This
was a most courteous manner in which to save two reputable
gentlemen from having their testimony put into the balance
and weighed by the rules which are applied to the ordinary
witness. We cannot, however, recognize it as a sufficient ex-
cuse for leaving material questions of fact undetermined. Even
so great a man as Sir William Blackstone could not condense
all the law into one sentence ; and a careful reading of the
chapter from which the learned referee quotes will show that
that learned man did not teach that there arose a presumption
of law that the parties had not agreed upon a specific compen-
sation for services, when there was a conflict of testimony as to
the existence of an express contract. The law implies a prom-
ise to pay what services are worth, when they are upon request
performed and the parties have not expressly agreed upon a
rate of compensation ; but if the amount of compensation has
been agreed upon, or a rule adopted by which it is to be ascer-
tained, the law lets the contract stand as the parties have made
it. If the theory of the referee is sound all express contracts

must fall when they are sustained by the testimony of but one witness and their existence is by another witness denied. Such a rule might be a convenient or even pleasant one for jurors or arbitrators when the witnesses on the respective sides of such a question were equal in number, for they might find that all the witnesses had told the truth, although the testimony was directly contradictory, and then go on and dispose of the rights of the parties without regard to the facts. If A sold a horse to B—and subsequently brought an action—alleging the animal to be worth $500 and admitting a payment of $100 upon account, it would only be necessary for him to prove the delivery of the horse and call witnesses who would swear that he was worth the amount stated, and when B testified that there was an express agreement of sale for $100 which had been paid, A having denied that any price had been agreed upon, the court would be required to charge the jury that if they were unable to decide as to the truth of the disputed question of fact A was entitled to recover what the horse was worth, less the amount actually paid. When the evidence is contradictory as to whether the parties have agreed upon the compensation which is to be paid for services, or for goods sold and delivered, there is no presumption of law that the contract as made was not complete in all its terms. The truth is to be determined from the evidence produced, as in any other disputed question of fact. The rights of these parties were dependent upon the facts out of which they grew. The facts were disputed, and until they were found the rights could not be ascertained. The burden was upon the plaintiff to establish by a preponderance of evidence the facts from which the law would infer a promise by the defendant to pay what the services were worth; if such facts were not so established the plaintiff was not entitled to recover: Phipps v. Mahan, 141 Mass. 471; Starratt v. Mullen, 148 Mass. 570; Stewart v. Thayer, 170 Mass. 562. The first, second and third specifications of error are sustained.

The referee took as the basis for ascertaining the value of the services the amount which the plans would have been worth if they had been skillfully prepared and complete, and deducted from said amount what it would cost to complete the plans and remedy the defects which they contained. The referee found as a fact that the plans were incomplete and defective. If the

plans had simply been incomplete, requiring only the services of an ordinary draughtsman to perfect the details, the basis adopted by the referee would not have been subject to just criticism. If the plans, however, contained material defects which only the skill of an experienced architect could discover, an entirely different question was presented. When an architect undertakes to prepare the plans for a large and expensive structure, he covenants not only that he is possessed of the requisite skill, but that that skill shall be exercised in the work which he has undertaken. If the product of his labor is a plan vitally defective, his employer might go on and erect a building enormously expensive which from its foundation up would be insecure. It is manifest that the value of a plan skillfully drawn furnishes no standard by which to ascertain the value of a plan containing such radical defects. A plan which if carried into execution would produce a building not self-supporting can hardly be said to come up to what is required of an architect. If the plan in question exhibited the skill which the nature of the employment demanded, its value was to be estimated accordingly. If it was so defective as not to meet the requirements of the purpose for which it was intended, it might be utterly worthless. If the plaintiff was entitled to recover, the value of his services is to be determined by what he himself did, and not what some more careful man might have done.

The judgment is reversed, and the cause is remitted to the court below with direction that the same be referred back to the referee, that further proceedings may be had in accordance with the foregoing opinion.

RICE, P. J., dissents.