# Osterling *v.* Allegheny Trust Company, Appellant.

*Banks and banking—Interest on deposits—Agreement as to rate —Evidence—Notation in books—Res gestæ—Statute of limitations —Points for charge founded on disputed evidence—Harmless error.*

1. In an action against a bank to recover interest on deposits, a notation on the books of the bank, stating the rate of interest, not disclosed to plaintiff, would not be evidence against the plaintiff to disprove the contract alleged by him concerning the rate of interest either as part of the res gestæ or upon any other proper theory.

2. Where plaintiff sues to recover interest at four per cent. per annum on his bank deposit and the entries in plaintiff's pass book are a transcript from defendant's ledger and it was admitted at the trial that they showed interest at the rate of two per cent. not four per cent. annually, the exclusion of evidence as to the ledger entries would be harmless error even if it was admissible.

3. The statute of limitations does not apply to a bank deposit until demand has been made, for the debt is not due until then. This rule refers to both principal and interest.

4. In an action of assumpsit to recover interest alleged to be due on bank deposits at an agreed rate of four per cent., where the bank alleged that the agreed rate was two per cent., it appeared that, while plaintiff was given a pass book about November 11, 1902, shortly after the deposit was made, no entry of interest was made therein until March 25, 1914. The entries disclosed the fact that the interest had been calculated at two per cent. instead of four per cent., the agreed rate as alleged by the plaintiff, where-

upon he brought suit for the difference. A witness was offered by the defendant to prove a notation on the books of the bank regarding the rate of interest, but the evidence was excluded by the court. *Held,* no error.

5. In such case a point for charge submitted by defendant, based on the assumption that the fact as to the date of the first entry of interest in plaintiff's pass book, as testified by defendant's witness, was correct, was properly refused, where the evidence was contradicted.

6. In such case the court properly refused to charge that a claim for interest on deposits accruing more than six years before the beginning of the suit was barred by the statute of limitations, notwithstanding plaintiff's statement avers that the interest is payable semiannually, such averment meaning that twice each year interest is to be calculated upon and added to this account.

*Contracts—Contract for services—Architect—Agreed compensation—Performance of additional work—Presumption as to rate—Costs.*

7. Where one is retained by or enters into the employ of another to perform defined services of a personal nature, at a compensation expressly agreed upon, and, after the services have been performed or during the course of their execution, such person proceeds with work of a similar kind or enters upon the performance of other service of the same general character, relating to, connected with or growing out of the original employment, without any fresh contract or understanding as to a change in compensation, or without a distinct, unequivocal notice to his employer that he insists upon a different standard of remuneration, the standard for valuing these latter services is that which the parties fixed for themselves in the first instance; for, in the absence of a new agreement, express or implied, the presumption is that they intend the original rate of compensation to continue.

8. In an action by an architect to recover a fee for services in remodeling a bank building, it appeared that he had made a written contract for the performance of architectural services in connection with the erection of an addition to the bank building at the rate of five per cent., upon the cost of the work; that during the progress of the work a decision was reached to remodel the interior of the old building, and plaintiff was instructed to perform the necessary services of an architect relating to this work. Plaintiff testified that there was no agreement as to compensation for his services in connection with remodeling the old building, but that he had told representatives of the defendant that he expected to be paid for it, and for the trouble they were putting him to in the performance of

that particular kind of work. There was no allegation that a new contract had been made or that plaintiff had expressly notified defendant as to the rate of compensation he would charge. *Held,* the rate fixed in the original contract must prevail, but a new trial was granted in order to determine the correct amount of the cost of the additional work, the costs to date to be divided equally between the litigants.

Argued Oct. 10, 1917. Appeal, No. 82, Oct. T., 1917, by defendant, from judgment of C. P. Allegheny Co., April T., 1916, No. 864, on verdict for plaintiff in case of F. J. Osterling v. Allegheny Trust Company. Before MESTREZAT, POTTER, STEWART, MOSCHZISKER and WALLING, JJ. Reversed in part.

Assumpsit to recover interest on deposits and architect's fee. Before HAYMAKER, J.

The opinion of the Supreme Court states the case.

Verdict for plaintiff for $6,936.10, upon which judgment was entered. Defendant appealed.

*Errors assigned* were rulings on evidence referred to in the opinion of the Supreme Court and the refusal of defendant's points.

*Charles W. Dahlinger,* for appellant.

*J. Roy Dickie,* with him *Wm. W. Wishart,* of *Wishart & Dickie,* for appellee.

OPINION BY MR. JUSTICE MOSCHZISKER, January 7, 1918:

The plaintiff sued in assumpsit and recovered a verdict, upon which judgment was entered; defendant has appealed. For purposes of this review, the case may be divided into two distinct parts, the first involving questions pertaining to a claim for interest on a deposit made by plaintiff with the defendant trust company, and the second relating to a claim for professional services performed by the former while acting as an architect for the latter.

As to the first branch of the case, from testimony produced by plaintiff the jury might have found, and in view of their verdict we must conclude they did find, the following facts: On September 2, 1902, plaintiff deposited $11,889 with defendant; the latter has two departments for the receipt of deposits, one of which handles savings accounts, bearing interest at four per cent. per annum, and the other checking accounts, paying two per cent. per annum; the deposit in controversy was made upon the agreement that it should constitute a savings account, and that defendant should pay four per cent. yearly interest thereon; the deposit remained intact until 1916, never having been drawn against; plaintiff did not at the outset receive a pass book, but, about November 11, 1902, he called at the bank and obtained one; at this time the book in question contained an entry of the original deposit only; the pass book was never again at the bank until March 25, 1914, when various items of interest to date were added, the first of these being, "Int. to Dec. 1/02, $57.53"; when plaintiff examined these entries, he discovered that defendant had calculated interest at the rate of two per cent. instead of four per cent. per annum; he made protest, and, when his complaint was not heeded, brought suit.

The above facts are stated from the most favorable view of the proofs that can be taken in behalf of the plaintiff, and they disregard much evidence produced by defendant tending to show that the original deposit was made and accepted upon the basis of a checking account; but, as previously stated, in view of the verdict we must assume that the jurors not only believed the evidence relied upon by plaintiff and, where irreconcilable, disbelieved that produced by defendant, but also drew all inferences in favor of the former. When thus viewed, the record is ample to sustain the verdict and judgment for plaintiff so far as they relate to the first branch of this case; but there are several assignments alleging trial errors, in connection with the part of the controversy we have been considering, which require determination.

The third assignment complains of a ruling on the evidence.   The defendant produced a former employee, and endeavored to have him testify concerning what was stated in one of its books of account upon the subject of the rate of interest to be paid plaintiff.   With this book before him, the witness was asked, "Does that page state the rate of interest on the account?"   Counsel for plaintiff objected, saying, "We have no objection to their showing the amounts of interest actually entered, but we do not think their own statement of [the rate of interest] is proper."   This objection was sustained, and an exception noted.   It is to be observed that the entries were not being used to refresh the witness's memory, and that no offer was made of the book in question as an independent piece of evidence; moreover, the entries in plaintiff's pass book are a transcript from defendant's ledger, and it was admitted at the trial that they showed interest at the rate of two per cent., not four per cent., annually. Under the circumstances, we do not see that error was committed by the ruling complained of, or that the defendant was prejudiced thereby.   A memorandum on defendant's ledger, not disclosed to plaintiff, to the effect that the account was to bear interest at two per cent., even if an entry of that character were there (and we find no offer upon the record to prove such to be the case), would not be evidence against plaintiff to disprove the contract alleged by him concerning the rate of interest, either as part of the res gestæ or upon any other proper theory: Murphy v. McMullin, 219 Pa. 506; Hottle v. Weaver, 206 Pa. 87.

The fourth assignment complains of the trial judge's refusal to affirm a point submitted by defendant to the effect that, if the jury believed the first entry of interest in plaintiff's pass book was made in January, 1903 (as testified by defendant's witnesses), and that plaintiff had possession of the book since that date, then there was "a legal presumption......he had knowledge of the fact that the interest was computed at two per cent. per an-

num"; and, "not having raised any objection until March 25, 1914," plaintiff was "estopped from claiming interest at a higher rate than two per cent. per annum." This request could not properly have been answered by an affirmation, for it is too strongly drawn. The entry referred to does not state upon its face the rate of interest or the time from which it was calculated; therefore, even if the jury believed it to have been made on the date contended for by defendant, this would not raise "a legal presumption" that plaintiff knew the interest was computed at two per cent. per annum. All the accompanying circumstances were for the jurors to consider, and from them they might have inferred that plaintiff did in point of fact have the knowledge which defendant claims he possessed, but they were not bound in law so to do. The verdict, however, comprehends a finding, in no way influenced by the alleged error now under consideration, to the effect that the entry in question was not made in plaintiff's pass book until March 25, 1914; this being the case, it is apparent that the answer here complained of did the defendant no harm, even if the request had been a proper one, which clearly it was not.

The fifth assignment embraces a contention that all interest accruing before February 10, 1910, above the two per cent. per annum admitted by defendant, is barred by the statute of limitations, the date given being six years prior to suit. Plaintiff's amended statement of claim contains an allegation that the interest is payable semiannually, and, in connection with the point now before us, defendant attempts to make much of this assertion; but it is evident the averment in question means simply that twice in each year interest is to be calculated upon and added to plaintiff's account, and not that it accrues at these times as a separate demand. "Interest, in its very nature, is but an incident of a debt" (Heath v. Page, 63 Pa. 108, 121), and ordinarily it is not compounded (Stokely v. Thompson, 34 Pa. 210), yet here, from time to time, the defendant appears actually

to have increased the corpus by adding accumulated interest, thereafter allowing interest upon the principal thus enlarged, in accordance with the custom of savings funds.  In other words, the entries in plaintiff's pass book show that defendant did not in any sense treat the interest items as separate debts, but merely as increments of the principal deposit.  A few cases may be found wherein, under contracts stipulating for annual payments of interest, it was held that "so much of the interest as accrued more than the statutory period before action brought is barred, notwithstanding the principal debt may not be barred" (22 Cyc. 1574; Dearborn v. Parks, 5 Me. 81, 86) ; but the facts in these cases differentiate them from a case such as the one at bar, which has to do with an interest-bearing bank or savings fund account, where the engagement by the institution is to pay the depositor both principal and interest when, and only when, payment shall be required, even though the interest may be calculated and added to the account at periodic times.  As to such accounts, "the statute does not begin to run......until the principal......becomes due and payable......; the accruing interest from year to year is not thus separated from the principal......, and consequently the statute of limitations does not run upon it until the principal is barred by the statute"; and this is the general rule: 15 R. C. L. 15; Grafton Bk. v. Doe, 19 Vt. 463, 467; DeCordova v. City of Galveston, 4 Texas 470, 482; Edmunds v. Waugh, L. R., 1 Eq. 418; s. c., 16 Eng. Rul. Cas. 292, and note.  It is settled in our State that the statute of limitations does not apply to a bank deposit until demand has been made, for the debt is not due till then: see Gardner's Est., 228 Pa. 282, 286, and cases there cited.  This rule refers to both principal and interest, and, if the contract in the present case is to pay interest at the rate of four per cent. per annum, as the jury has found it to be, then, on the facts at bar, plaintiff is entitled to recover at that rate for the full period of the deposit, without regard to the

statute of limitations. The cases cited by defendant relate to debts payable in installments, periodic settlements with balances formally struck, and accounts stated; they have no controlling application here. We fail to see merit in any of the assignments of error now under consideration; they are all overruled.

As to the second branch of the case, the facts are these: Early in 1913, defendant employed the plaintiff as an architect to draw plans, etc., for an addition to its bank building, the contract being evidenced by a letter, dated January 24, 1913, addressed to the former and signed by the latter, as follows, "For a commission of five (5%) per cent. upon the cost of the work in the erection and completion of the safe deposit department, or extension to your present bank building, I will furnish preliminary drawings and sketches until the same meet with your approval; furnish working drawings and specifications in such number as may be necessary to cover all branches of the work; supervise the erection and construction of the building; prepare all contracts and perform the usual and customary services of an architect, and to your entire satisfaction." During the course of the work contemplated by this written contract, defendant concluded to make certain changes in the interior of its old building, in connection with the extension then under way, and plaintiff was instructed to perform the necessary services of an architect relating to this new work. Plaintiff admits that most of the additional work in question was done at his suggestion, and that, for his services rendered at the beginning thereof, he orally agreed to charge only the commission of five per cent. mentioned in the above quoted letter. In this connection, he testified, "When I persuaded the directors to break into the front building, remove the rear wall and connect up so as to improve the new addition, Mr. Dewar [of the defendant corporation] asked me whether that would be in the commission of five per cent.......I said, 'Yes, for that particular part, we would let that go with the origi-

nal work' "; but plaintiff contends that he never agreed
to do the subsequent work in the bank building proper
on the five per cent. basis, stating in his testimony:
"Never at any time after that [the conversation just
quoted] did Mr. Dewar or any of the directors of this
bank ask me what my commissions would be.   I particu-
larly cautioned Mr. Hansell [of the defendant corpora-
tion], when they got into this remodeling work, step by
step, that I expected to be paid for my work, for the
extra work and trouble they were putting me to; that it
was the most particular kind of work and required a
great deal of care.   I told Mr. Hansell twice at my of-
fice, because I didn't want to go along and not warn them
that they would have to pay more than perhaps a
straight-away job."   On the other hand, defendant pro-
duced several witnesses who testified positively that
plaintiff agreed to do all of the work in controversy for
a five per cent. compensation, to be calculated as men-
tioned in his original contract.

While plaintiff's services in connection with the re-
modeling of defendant's old bank building was, perhaps,
somewhat different from those performed by him in and
about the erection of the extension thereto, yet the
former was of the same general character as the latter,
and, in view of the stipulated compensation designated
in the original written contract between the parties, the
burden was upon plaintiff at least to show facts which
would give rise to an implied contract to pay a higher
standard of remuneration for the one than the other, be-
fore he could recover anything over and above the five
per cent. commission originally named by him: Wallace
v. Floyd, 29 Pa. 184, 185; Ranck v. Albright, 36 Pa. 367,
371; Rosencrance v. Johnson, 191 Pa. 520, 532.   See
also Johnson v. Wanamaker, 17 Pa. Superior Ct. 301,
304-6.

We do not mean to intimate the cases just cited hold
that a contract fixing a rate of compensation for certain
defined personal services will be extended to other serv-

ices of a like kind, rendered by the same person, but in no wise contemplated by such contract or connected with the work therein provided for; they do, however, lay down a general rule, applicable here, which may be stated thus: Where one is retained by or enters into the employ of another to perform defined services of a personal nature, at a compensation expressly agreed upon, and, after the services have been performed or during the course of their execution, such person proceeds with work of a similar kind or enters upon the performance of other service of the same general character relating to, connected with or growing out of the original employment, without any fresh contract or understanding as to a change in compensation, or without a distinct, unequivocal notice to his employer that he insists upon a different standard of remuneration, the standard for valuing these latter services is that which the parties fixed for themselves in the first instance; for, in the absence of a new agreement, express or implied, the presumption is that they intend the original rate of compensation to continue.

Of course, had the plaintiff at bar produced evidence tending to show some sort of a definite notification that, from a fixed time or after the completion of a certain designated part of the new work, he would not render any future service in connection therewith unless his pay were based upon a standard of compensation other than that stipulated in his original contract, then the case would be different; for, under such circumstances, the law might imply an undertaking by defendant to pay plaintiff a higher rate of compensation for his service on the new work, if, as a matter of fact, such higher rate represented the reasonable worth thereof. Here, however, the evidence upon the subject in hand not only preponderates against plaintiff, but it is entirely inadequate to show any contract, either express or implied, fixing a basis of compensation different from that named in plaintiff's original undertaking with defendant, i. e., five

per cent. The testimony relied upon, before quoted, is merely to the effect that plaintiff cautioned defendant he expected to be paid for his extra work, not that he demanded a higher rate of pay than previously fixed upon in the original contract of employment; and, under the circumstances, this was not enough to put defendant on notice that it would be required to pay more than five per centum of the proper cost of the whole job.

We can not say, however, that plaintiff was entitled only to the sum allowed him in defendant's affidavits of defense (as set forth in our next paragraph); for the amount of compensation to be recovered depends upon the proper cost of remodeling defendant's old building, which (unless the parties can agree upon it and thereby avoid a new trial) must be found by a jury. On the evidence as it stood at the last trial, defendant was entitled to an instruction that no understanding, either express or implied, having been shown by plaintiff to pay him more than the five per cent. mentioned in the original contract of employment, that is the standard of compensation which must guide the jury in rendering their verdict; this, in effect, was the instruction requested, as called to our attention by the eighth and last assignment of error, which is sustained. What we have already written sufficiently covers the other assignments, so it is unnecessary specifically to consider them.

To clarify the order we are about to make, it may be well to state that plaintiff sued to recover (1) the amount of his original deposit, $11,889, with interest thereon at the rate of four per cent. per annum, (2) $1,-500, being architect's commission at five per cent. upon the cost of construction of the addition to defendant's building, and (3) $3,000 in fees for extra professional work in connection with the remodeling of the old building, which latter service plaintiff contends was not contemplated or provided for in the written contract designating his compensation. Defendant, in its affidavits of defense, admitted liability for the deposit, with two

per cent. per annum interest thereon, the $1,500 commission and $546.95 of the $3,000 claim; for all of which, prior to trial, judgment was entered in the sum of $17,-575.27, the suit proceeding to trial on the issues (1) as to the proper rate of interest, and (2) the compensation to which plaintiff is entitled for the work connected with his $3,000 charge.   The verdict and judgment thereon cover all of plaintiff's claims less the $17,575.27 admitted in defendant's affidavits of defense; but the record contains sufficient data to enable the court below correctly to determine what proportion of the common judgment belongs to each branch of the case.   Hence, we shall make the following order:

The judgment, to the extent of its relation to the first branch of this case, is affirmed; but, so far as it pertains to the second branch of the controversy, it is reversed with a venire facias de novo.   The court below is directed to apportion the award of the jury in accordance with the foregoing opinion and this order; the costs to date to be divided equally between the litigants.