## Boas, Appellant, *v.* City of Philadelphia.

*Building contracts—Construction—Time charge—Extra work.*

In a contract to construct an elevated railway there was a provision that $13,000 should be added to the contract price as a "Time Charge." Such charge was not to be a part of the compensation of the contractor, irrespective of the time when the work was completed, and express notice was given that the amount so added to the bill would be deducted when payments were made. It was to be resorted to in a proportionate degree in the event that the contractor completed his work ahead of the limit allowed him, and was to be subtracted from his claim if the work should be completed at the time appointed in the contract, and if not so completed was to be increased at the rate of $200 per day.

*Held,* that this was not a provision for liquidation of damages, but established a method for providing extra compensation for promptness, and the standard of reduction of compensation on default in performance as to time.

Where the contract provided for the furnishing of electricity at a certain price during the term of the contract, and the work was not completed within the term, electric current furnished after its expiration must be taken care of in the provisions for unforeseen work, based on the cost of the materials furnished, plus ten per cent.

340, (1925).]     Syllabus—Opinion of the Court.

Where the municipality for which the railway was constructed took no action as to the extension of the contract. the service furnished subsequent to its expiration were not comprehended within the terms thereof, and must be paid for under the provisions for unforeseen work.

GAWTHROP, KELLER and PORTER, JJ., dissent.

Argued November 14, 1924.   Appeal, No. 224, Oct. T., 1924, by plaintiff, from judgment of C. P. No. 4, Phila. Co., June T., 1923, No. 5284, in favor of defendant, on case stated in the suit of Francis J. Boas v. City of Philadelphia.   Before ORLADY, P. J., PORTER, HENDERSON, TREXLER, KELLER, LINN and GAWTHROP, JJ.   Affirmed.

Case stated to determine liability on a contract to construct a railway.   Before AUDENRIED, P. J.

The facts are stated in the opinion of the Superior Court.

The court entered judgment in favor of the plaintiff in the sum of $190.23 and costs.   Plaintiff appealed.

*Error assigned* was, among others, the decree of the court.

*Walter Biddle Saul,* of *Saul, Ewing, Remick & Saul,* and with him *Earl G. Harrison,* for appellant.

*James Francis Ryan,* Assistant City Solicitor, and with him *Joseph P. Gaffney,* City Solicitor, for appellee.

OPINION BY HENDERSON, J., February 27, 1925:

The plaintiff entered into a contract in writing with the City of Philadelphia for work in connection with the construction of the Frankford Elevated Railway and Bustleton Surface line.   The undertaking involved a large sum of money, all of which was paid on the completion of the work except two items now disputed and a small claim which was subsequently settled.   The issue

comes up on a case stated in which the material parts of the contract are recited. The first claim is for $13,000 for construction work at the unit and lump prices bid in the proposal contained in the contract. The claim brings into consideration two sections of the specifications according to which the bid for the work was received under the captions "Time of Completion" and "Time Charge," from which it appears that time was to be an essential element in the contract and the work was to be completed by or before October 15, 1922. The time of beginning was left somewhat indefinite, but the work could be commenced immediately on notice from the chief engineer that the contract had been approved by the mayor and certified by the city controller. It was provided that the time charge would not begin to be applied until August 1, 1922. The second section referred to recited the fact that delay in completion of the proposed work would involve the city in increased cost for interest on capital already invested and that it was important the work be pressed vigorously to completion. For that reason it was provided that a time charge would be made against the contractor and that this charge "which should be included by the bidder in his cost estimate for all time, except Sundays, elapsing from and including August 1, 1922, to and including the date when he expects to complete the work, will be at the rate of Two Hundred Dollars ($200) per day, to and including the date when all of the work is completed. The time charge will be deducted when payments are made." Pursuant to these specifications the bids for the work included a time charge of $13,000 on the basis of $200 per day for the period running from August 1st to October 15th. The work was awarded to the plaintiff and was accepted as completed on the 15th of October, 1922. The city declined to pay the amount of the time charge for the reason that the contractor had not anticipated the time of completion and was therefore not entitled to any part of it. The learned trial judge sustained this

action and our examination of the contract brings us to the same conclusion. The language of the specification with reference to the time charge could have been improved with respect to clearness, but a careful examination of it satisfies us that it was introduced for the purpose of facilitating the settlement of any sum earned for promptness or forfeited on account of delay in the completion of the work. It was clearly stated and must have been so understood by the plaintiff and other bidders that the lump sum of $13,000 added to the bids was not to be a part of the compensation to the contractor irrespective of the time when the work was completed, and express notice was given that the amount so added to the bill would be deducted when payments were made. It would be resorted to in a proportionate degree in the event that the contractor completed his work ahead of the limit allowed him, and would be subtracted from his claim if the work should be completed at the time appointed in the contract, and if not so completed would be increased at the rate of $200 per day after that date. On no other theory can it be satisfactorily explained why the sum involved was directed to be inserted in the bids. If this amount had no relation to the value of the work to be done, it was either a gratuity allowed the bidder or a provision for determining the compensation for promptness or liability for tardiness of the bidder under the time limitation. We must assume that the parties understood the contract, and that the bids were enlarged to cover the time charge as directed by the city authorities. This is not denied and the plaintiff is put in the position of demanding the amount without having rendered adequate return therefor. The city had no authority to donate this sum, nor can we assume, in view of the terms of the agreement, that he understood when the bid was made that he was to have this reward for completing his contract at the date when he was bound so to do. It is true the provision in the "time charge" was based on the computation from August 1, 1922, and

standing alone this might appear to create a liability of the contractor although his undertaking was completed at the time specified, but it is apparent that no such construction of the agreement was intended by the parties. It is not in a proper sense a provision for liquidation of damages, but establishes a method for providing extra compensation for promptness and the standard of reduction of compensation on default in performance as to time.

The next item in the plaintiff's claim is for electric power furnished the defendant for testing and operating cars or other equipment of the Frankford Elevated Railway. His contract involved the cost of wires, transformers, meters and connections. The price to be paid was 5½c per kilowatt hour. The service was to be "limited in amount to that required for operation prior to October 15, 1922." The claim is for electrical energy subsequently furnished because of the necessity of such service in testing cars and other equipment. The number of hours charged for was 356,750. The plaintiff claims the same rate of compensation which was provided for in respect to power to be furnished before October fifteenth. The defendant offered to pay on the basis of cost of labor, materials, etc., plus 10% of the amount thereof. This the plaintiff refused to accept. The contention was therefore as to the extension of the written contract to a period subsequent to October fifteenth. We find nothing in the case stated from which it can be held as a conclusion of law that the electric current furnished after October 15, 1922, was so furnished under the written agreement with its definite limitation to that date. The subject of that contract involved a higher rate of compensation than an implied contract called for with respect to the current furnished after October fifteenth. It is not shown that any municipal action was had which extended the contract after the date last named, and if the claim is to be asserted on the ground that service was received and accepted com-

pensation would only be due on the basis of the value of
the thing supplied. The force account provision allows
for unforeseen work found to be necessary in connection
with that covered by the other items of the specifications,
but as to the unforeseen work the price is to be based on
the cost of labor, materials and employer's liability, plus
ten per cent. It is to be observed, however, that under
that section no work or material shall be paid for by the
city "unless it be ordered as such in writing." It is not
set forth that the plaintiff received any order in writing
for his extra claim, nor does he rely on the provisions of
the force account section as a foundation for a recovery.
We are unable to regard the claim for electric power
furnished after the 15th of October as covered by the
written agreement. If the plaintiff have a cause of ac-
tion for compensation for such service rendered, it must
rest on some other right than the written contract
affords. The learned trial judge reached a correct con-
clusion on the facts presented in the case stated.

The judgment is affirmed without prejudice to the
right of the plaintiff to assert any right of action he may
have to recover compensation for the electric power fur-
nished after October 15, 1922.

DISSENTING OPINION BY GAWTHROP, J.:

One of the questions presented is whether plaintiff
(appellant) is entitled to recover for the electric energy
furnished from October 15th to November 4, 1922, under
the terms of the contract between him and the city, dated
July 1, 1922.

The facts are not in dispute. They appear in a case
stated for the opinion of the trial court and are sub-
stantially these: A written contract was executed by
the parties, on July 1, 1922, for supplying work and
equipment in and about the building of a line of rail-
way. One of the items to be furnished by plaintiff was
"electric energy" for the operation and testing of cars
under item 13 of the contract, and the city agreed that

"payment will be made at the unit prices bid for the quantities registered on the meters." The price bid was five and a half cents per kilowatt hour. The contract further provided that this electric energy "shall be limited in amount to that required for operation prior to October 15, 1922." For the energy furnished to the date named, the city has paid. When the time limit was reached, the testing of the road and its equipment was not completed and plaintiff continued to furnish electric current from October 15th to November 4, 1922, to the amount of 356,750 kilowatt hours and of the value, according to the bid, of $19,621.25. The case stated, referring to this additional energy, asserts these significant facts: "The plaintiff continued to furnish electric energy for the same purpose, to wit, the operation and testing of cars and other equipment......which electric energy the City of Philadelphia used for the purpose of the operation and testing of cars and other equipment...... The use of the electric energy......was made necessary by the failure of persons other than the plaintiff, who had contracts with the city for the delivery of material, so to deliver in time to permit testing before October 15, 1922." When the time limit named in the original contract had been reached, the construction, equipment and testing had not been completed, but this was not due to any neglect of plaintiff. In order that the railway might be completed and operated, plaintiff continued to furnish electric current for testing purposes with full knowledge on the part of the city, and the city accepted and used the current for the identical purpose stipulated in the written contract.

While, as the case stated avers, no contract other than the written one was expressly made by the parties, we are firmly of opinion that. plaintiff, under the agreed facts, is entitled to be paid for the current furnished, at the bid price, after October 15, 1922.

When the written contract was executed, both parties evidently anticipated that the railway would be fully

completed by October 15th. Through no fault of plaintiff, additional current for testing purposes was required by the city; plaintiff furnished it; and the city accepted and used it for the purpose stated in the contract.

Under the facts here presented, the applicable legal rule is this: "When both parties continued to act under the contract, their tacit agreement to be bound by it is as strong as any express renewal could make it": Good Intent Co. v. Hartzell, 22 Pa. 277. There is no difference in principle between the case before us and that of the performance of personal services under a written contract for a definite period after the period has ended, or of the continued occupancy of land after the term stated in the contract has expired. Where the services or the occupancy continue the law presumes that the servant shall be compensated and the landlord shall be paid at the rate fixed by the writing: Wallace v. Floyd, 29 Pa. 184. "When a person hired at an agreed price, for a certain time,........continues in the same employment after the expiration of the time without any new agreement, the presumption is, that the parties understand that the original rate of compensation is to be continued. Such is the contract which the law implies, and there can be no recovery upon a quantum meruit, for the parties are presumed to have fixed the rate of compensation": Ranck v. Albright, 36 Pa. 367.

The city, here, with full knowledge that the work of construction, testing, etc., had not been completed within the time limit, without any suggestion looking toward a new contract or change in terms of the old, continued to accept what plaintiff furnished and applied it toward the final completion of the electric railway system, and it follows as matter of law that "a continuance to act under the terms of an expired contract without objection, concludes the party": Buckley v. Garrett, 47 Pa. 204. If plaintiff were seeking to recover an increased rate per kilowatt hour on the theory that the time limit named in the contract had passed, he would be confronted with

the fact appearing in the case stated that, with no effort to change the written contract and no suggestion that the contract had terminated, he voluntarily continued to furnish what the city required in order properly to equip and operate the road, and the law will not permit him to call for payment for electric energy at an increased rate.   Whether the written contract requires the furnishing of a particular thing at a given rate during a definite period, or the performance of personal services during such period, the same legal principle is applicable.   "Where one is retained by or enters into the employ of another to perform defined services of a personal nature, at a compensation expressly agreed upon, and, after the services have been performed or during the course of their execution, such person proceeds with work of a similar kind or enters upon the performance of other services of the same general character, relating to, connected with, or growing out of the original employment, without any fresh contract or understanding as to a change in compensation, or without a distinct, unequivocal notice to his employer that he insists upon a different standard of remuneration, the standard for valuing these latter services is that which the parties fixed for themselves in the first instance".: Osterling v. Allegheny Tr. Co., 260 Pa. 64.

Municipal action is not a condition precedent to plaintiff's right to recover in the circumstances at the contract rate.   Nor is his remedy under the force account provision of the contract, which clearly is confined to "unforeseen work."   In the written information furnished to bidders it is stated: "Force account,—The force account item bid is taken to provide means of payment for unforeseen work that may be found necessary and that is of a class not provided for in the unit price items."  We do not see how it can possibly be asserted in wisdom and in truth that the electric energy furnished after October 15th comes within the force account item.   We agree with the able counsel for appellant that the work was

no unforeseen, that it was specifically described, and that there is a unit price item bid for it.

According to the law as we understand it, appellant is entitled to recover for the electric energy furnished from October 15th to November 4, 1922, under the terms of the contract. For that reason, we are constrained to enter our dissent from the judgment of the majority.

PORTER and KELLER, JJ., join in this dissent.