## Commonwealth of Pennsylvania v. The Telegraph Press

*James H. Duff*, Attorney General, and *H. Albert Lehrman*, Deputy Attorney General, for Commonwealth.

*Storey & Bailey*, for defendant.

WOODSIDE, J., February 2, 1948.—This comes before us on preliminary objections to the complaint. The objections were three: (1) A motion to strike off; (2) a motion for a more specific complaint; and (3) a demurrer. The first two objections having been cured by an amended complaint, the only question before us now is the demurrer which is based on the theory that plaintiff is seeking to enforce a penalty rather than collect liquidated damages.

A contract was awarded The Telegraph Printing Company of Pennsylvania to publish the decisions of the Superior Court of Pennsylvania for a term of 10 years, commencing July 1, 1935, and ending June 30, 1945. This contract provided, inter alia, that the printing company should cause each volume to be electrotyped and the plates thereof backed and preserved as the property of the Commonwealth. The printing company further agreed that all volumes of Superior Court Reports published under the contract should be ready for delivery to the purchasers thereof not later

than 45 days after the last correction for said volume was received.

Subsequent to the contract defendant changed its name to The Telegraph Press. The contractor failed to publish the reports within the time specified in the contract. The breach was attributed to difficulty in obtaining metal for electrotyping plates required by the contract due to abnormal shortages and dislocations caused by the war.

To remedy this situation the Act of May 6, 1943, P. L. 189, authorized the State reporter to waive the provision requiring that the reports be electrotyped and on November 16, 1943, pursuant to this authority an agreement was concluded between the State reporter and The Telegraph Press which provided, inter alia, that the State reporter agreed to waive the electrotyping requirement commencing with Volume 151 and in consideration of such waiver as to Volumes 151 and 152 The Telegraph Press agreed to deliver to the Secretary of the Commonwealth, for payment to the State Treasurer, the sum of $700 within 30 days after the completion of Volume 151 and an additional sum of $700 within 30 days after the completion of Volume 152, the sum of $700 representing the approximate cost to the contractor of electrotyping one volume of reports.

It was further agreed by the parties that in lieu of making a payment of $700 for Volume 153 and each succeeding volume the contractor would speed up the publication of the advance reports and bound volumes of the Superior Court Reports. The contract set up a schedule of liquidated damages to be paid by the contractor for failure to meet the specified deadlines for galley proofs, advance reports and bound volumes. Paragraph 3 (d) is the only part of this schedule of importance since the Commonwealth is not invoking the others. It provides as follows:

"(d) The Telegraph Press will pay, as liquidated damages for failure to publish and deliver the bound

volume to the State Librarian and to all subscribers for the bound volume, according to the terms of paragraph 10 of the original contract, the sum of Twenty-five Dollars ($25.00) for each day after the 45th day, provided that such penalty shall not be imposed unless, in a contract year beginning July 1 and ending June 30, publication and delivery of at least one volume are delayed for thirty days, or publication and delivery of two or more volumes are delayed for a total and cumulative number of thirty days or more."

The contract also provided that the total amount payable as liquidated damages on any one volume should not exceed $700.

The terms of the November 1943 contract relative to the time for delivery of bound volumes 153, 154, 155, 156 and 157 were breached by the contractor so that the maximum sums provided therein became applicable.

Suit was instituted by the Commonwealth to recover the sum of $4,900 together with interest and fees allowed by law to the Attorney General, representing $1,400 due on the publication of Volumes 151 and 152, and $3,500 damages for delay in the publication of bound Volumes 153, 154, 155, 156 and 157.

Defendant contractor pleaded tender of the $1,400 sum due on Volumes 151 and 152 and moved for a dismissal of the complaint for legal insufficiency for the reason that the sums demanded were not liquidated damages but penalties.

The question at issue is whether the sums sued for are recoverable by the Commonwealth as liquidated damages or whether being in the nature of a penalty recovery should be denied.

Whether a sum stipulated for breach of contract is a penalty or liquidated damages cannot be determined by the name given it in the contract: Philadelphia Dairy Products Company, Inc., v. Polin et al., 147 Pa. Superior Ct. 26 (1941) ; Lackawanna Boiler & Grate Co.

v. Lee Coal Storage Co., 290 Pa. 561 (1927). In the present case both terms are used, as witness paragraph 3(*d*) of the contract quoted above.

The rule most often cited by the courts of Pennsylvania is that the intent of the parties should control: Holmes Electric Protective Co. of Philadelphia v. Goldstein, 147 Pa. Superior Ct. 506 (1942) ; York v. York Rys. Co., 229 Pa. 236 (1910). Professor Williston in his work on contracts, volume 3, paragraphs 777 and 778, points out that if this rule is followed strictly nearly every penalty would be enforced for if the parties provided a penalty they must have intended a penalty. If the intent of the parties test is applied to the contract in question there can be no question that the sums in question are liquidated damages.

A. L. I. Restatement of the Law of Contracts, §339, sets forth the law as follows:

"LIQUIDATED DAMAGES AND PENALTES.

"(1) An agreement, made in advance of breach, fixing the damages therefor, is not enforceable as a contract and does not affect the damages recoverable for the breach, unless

"(a) the amount so fixed is a reasonable forecast of just compensation for the harm that is caused by the breach, and

"(b) the harm that is caused by the breach is one that is incapable or very difficult of accurate estimation."

The damages the Commonwealth suffered are incapable of accurate estimation and the liquidated damages stipulated are not unreasonable. Defendant contends that the Commonwealth was only inconvenienced not damaged, but this inconvenience to the Bench, the Bar and the public generally caused by the delay in publishing the bound volumes of the Superior Court Reports was of sufficient public concern to warrant the liquidated damages stipulated.

The Commonwealth further contends that even if the sums in question are construed a penalty there is sufficient authority to take them out of operation of the general rules of contract. This contention is based on the Act of May 6, 1943, P. L. 185, which reads as follows:

"Sec. 3. The State Reporter shall have full power to formulate and prescribe terms and specifications of the contract for the printing and publication of the . . . bound volumes . . ., in addition to those enumerated in this act, including, but not limited to . . . (b) the form and the terms of the contract, *including penalty provisions deemed necessary or desirable by him to assure proper performance by the contractor . . .*". (Italics supplied.)

This legislative authority to include necessary penalties in any contract for the publication of the State reports when coupled with the general reluctance of the courts to hold provisions for the payment of sums of money upon breach in contracts between a governmental agency and a private party, concerning the performance of a matter in which the public has an interest, as penalties rather than liquidated damages would indicate that the sums in question should be recoverable by the Commonwealth: Malone et al. v. Philadelphia, 147 Pa. 416 (1892) ; York v. York Rys. Co., supra.

In City of Marshall v. Atkins, 60 Texas Civ. App. 336, 127 S. W. 1148, the above rule is well stated (p. 342) :

"Cases of penal bonds between private persons, where the damages are readily ascertainable, have no application to the instant case. A city in its corporate capacity engaging for the establishment and maintenance by a private person or corporation, of gas, or electric lights, or waterworks or other like public utilities, does so in the performance of its public functions and for the purpose of promoting the convenience of

its inhabitants. It is an agency in the government of the citizens within its territory, and acts for the public, and has no private interests. And when a private person who has entered into an obligation with the city to construct and put in operation a public utility within a given time, as in the instant suit, fails to comply with the obligation in that regard, the city, in its corporate capacity, does not suffer any loss or damage capable of judicial ascertainment. Nor are the inconvenience and loss suffered by the public, on whose behalf and for whose benefit the franchise was granted and the obligation made, capable of ascertainment. Such loss and damage by the public would be too conjectural and speculative to be made the basis of recovery in such cases. To stipulate for a fixed sum as liquidated damages for breach of the undertaking is the only method by which the city, in such undertaking, can obtain anything like adequate compensation for the loss sustained by the public by the breach of such obligation. The sum forfeited as liquidated damages goes into the treasury and inures to the benefit of the public."

Aside from these grounds there is another compelling reason for not construing these sums as penalties. The doctrine that penalties in a contract will not be enforced is an equitable one to relieve defendant from an unjust hardship. In the instant case it is difficult to see how the enforcement of the provision for liquidated damages will result in a hardship. It was agreed by the parties to the contract of November 1943 that the waiving of the requirement that each volume of the Superior Court Reports should be electrotyped would result in a saving to defendant of approximately $700 per volume. Defendant recognized this fact in agreeing to repay to the Commonwealth $700 on Volumes 151 and 152. Instead of requiring defendant to repay this saving on all subsequent volumes the Commonwealth said in effect: "We will allow you to keep this saving in return for your speeding up publication."

While the contract is not so worded, the schedule of liquidated damages specified really is a schedule of the requirements defendant had to meet to be entitled to this $700 additional amount.

Treated in this light the sums here involved become bonuses defendant could have retained had it met the requirements rather than penalties for failing to make the deadline. Having failed in every instance to meet the required deadlines for publication of the volumes of the reports defendant cannot retain such bonuses.

The sums in question here are much like the "Time Charge" in the case of Boas v. City of Philadelphia, 84 Pa. Superior Ct. 340 (1925). In that case there was a sum of $13,000 labeled a "Time Charge" to be paid in addition to the contract price if the contractor completed the construction before a certain date and $200 was to be deducted from that amount for each day that completion of the contract ran beyond the specified date. The court held that this amount was not a provision for liquidation of damages, but established a method for providing extra compensation for promptness together with a standard of reduction of compensation on default in performance as to time. The contractor, having failed to complete the contract until this standard of reduction at the rate of $200 per day had eliminated the $13,000 "Time Charge", was not allowed to recover any of it.

When it is remembered that the $700 per volume represented a saving to defendant which it was to be allowed to retain if it speeded up its performance according to a schedule which was no more rigorous than that called for by the original contract it can readily be seen that defendant's contention that it is a penalty must fall.

And now, to wit, February 2, 1948, the demurrer is overruled and defendant shall have the right to plead over within 20 days in accordance with Pa. R. C. P. 1028 (d).