## Consoli v. Heilman et ux.

*Russell L. Hiller*, for plaintiff.
*John W. Forry*, for defendants.

MAYS, P. J., May 5, 1950.—Plaintiff declared in general assumpsit which may be here designated as quantum meruit; and in special assumpsit. In the former, he contends that in consideration that he has done work and furnished materials at the request and instance of defendants, they promised to pay him so much money as

he reasonably deserved to have therefor, and that plaintiff deserved to have the specific sum named. In the second, he relied upon an express contract or promise, various sums agreed upon.

In pleading the special assumpsit, he stated, in part, as follows:

In paragraph 12:

"On or about January 12, 1949, plaintiff and defendants, Mervin S. Heilman and Mary V. Heilman, his wife, entered into an oral agreement whereby plaintiff was to perform excavating and grading work for the defendants upon their premises. . . ."

For such services, defendants were to pay plaintiff various sums as therein set forth. Again, in paragraph 13:

"In accordance with said agreement, plaintiff on or about January 14, 1949, entered upon the performance of said agreement, utilizing the equipment mentioned in Paragraph 12, above, and continued in such performance until on or about April 12, 1949."

In Par. 14:

"Plaintiff has completed the performance on his part of said agreement."

Defendants, admitting an oral contract, deny that it was as alleged by plaintiff but, on the contrary, aver that defendants were to pay, and plaintiff would receive in full payment, an agreed price of $600.

The trial judge pointed out to the jury that if the jury find that the contract was as testified to by plaintiff, then "he should recover everything that he seeks to recover because there is no controversy about the fact that all that work was done. . . . There is no question in this case as to the fairness of those charges made, but whether fair or not, the burden is upon plaintiff to prove that that was the contract, and if he satisfied you by a fair weight of the testimony, then your verdict should be for plaintiff in the full amount

. . .". The trial judge, in presenting the theories of defendants, said:

"The Heilmans allege, and it is their contention that on this particular day, Mr. Consoli and Mr. Heilman went out upon the scene of his work, where the work was to be done, and Mr. Heilman told Mr. Consoli the area that was to be worked upon. . . . After having surveyed this whole thing, and having done the spading or digging, Mr. Consoli said words to this effect, that unless there was rock discovered and blasting was necessary, he would do this job for $600. And again, "Now what was the contract? That is what you have to decide. Was it as testified to by Consoli, or was it as testified to by Heilman?" The jury apparently rejected plaintiff's contention, bringing in a verdict in favor of defendants.

Plaintiff has filed the customary reasons for a new trial, that the verdict was against the law, the evidence and the weight of the evidence. An additional reason was filed December 29, 1949:

"The learned trial judge erred in refusing the plaintiff the right to prove his case in the alternative and also erred in refusing to submit the case to the jury on two theories, namely contract and quasi contract."

Manifestly, the first part of this reason must have some reference to errors of law or fact which the court made in the admission or rejection of evidence. This need not be considered since this is a specification complaining of the admission or rejection of evidence, without setting out such evidence: 6 Standard Pa. Practice, 352.

Under the provision of Pa. R. C. P. 1020 (c), plaintiff had the right to plead in the alternative even though the two allegations may be inconsistent. Plaintiff in this case, in the filing of his claim, did not comply with the provisions of rule 1024 (b) which provides:

"If a pleading contains averments which are inconsistent in fact, the verification shall state that the affiant has been unable after reasonable investigation to ascertain which of the inconsistent averments, specifying them, are true but that he has knowledge or information sufficient to form a belief that one of them is true."

On the contrary, he set forth in the customary manner, "that the facts set forth in the foregoing complaint are true and correct". It is obvious that both of these allegations could not be true.

At the trial, plaintiff testified that his second contention was true, viz., that there was an oral understanding and agreement.

"Q. What conversation did you have with the defendants regarding terms?

"A. Well, since there was no engineer, or they had no plans or specifications for the job I said we are not able to give a definite contract price which is the usual custom on contract work.

"Q. Just tell what happened there.

"A. I said 'I ask $5.75 an hour for the use of the Allis-Chalmers HD-5 bulldozer, ten foot blade to do the work.' He agreed at that time that we should go ahead and start at our own convenience.

"Q. Did you say you had agreed to do the work at $5.75 an hour with the bulldozer?"

"A. I agreed to do the work for that price and start immediately after the completion of the last job where he first met us.

"Q. How did you arrive at that price?

"A. The normal way.

"Q. I believe you mentioned there was some equipment other than that which we already described? Can you tell us about the inclusion in your bill there of a D-8 caterpillar and scoop?

"A. . . . We recommended, therefore, that we bring in the D-8 tractor with scoop, which is a machine with a big scoop that picks up ground and delivers it to the site. . . .

"Q. Will you describe to whom you made the recommendation?

"A. We recommended this to Heilman that it should be brought in to save money and complete the job in a shorter time.

"Q. What was the result of that recommendation?

"A. We told him the cost of the job, the nature of the equipment, what it could do, how long it would take if we had the required equipment and he agreed upon it.

"Q. Did you bring the caterpillar tractor D-8 into the job?

"A. We delivered it as soon as possible or when we could get it. I think it was immediately afterward.

"Q. Was there any agreement between you and the defendants regarding the price to be charged for that equipment?

"A. The agreement was that he should pay, since that piece of equipment didn't belong to me, I rented it and left him have it at the same rental fee I had to pay to a personal friend. . . .

"Q. Was Mrs. Heilman present at the conversations you told about?

"A. At the majority of them, she was, the first appearance she was.

"Q. Was she present at the time you gave a price and were instructed to proceed with the job?

"A. She was right there."

Here, we have testimony on the part of plaintiff that there was an oral contract and he was to be paid for the doing of certain work at definite and fixed prices for various kinds of work. Defendants, on the contrary, admitting that there was an oral understanding, testify to the effect that all the work was to be done

for $600. As already pointed out, the trial judge told
the jury that if the contract was as testified to by plain-
tiff, a verdict should be for the full amount as claimed.
On the contrary, if the contract was as testified to by
defendants, that they have already paid the contract
price and more, the verdict should be for defendants.

In the face of such testimony, should the court have
permitted the jury to disregard its responsibility to
determine whether there was an actual contract and
what it was and in the face thereof, permit a recovery
on a quantum meruit? We think not. While a plain-
tiff is permitted to plead in the alternative, he cannot
recover in general assumpsit where the express con-
tract fixes the value of the thing or service or adopts
a rule by which it may be determined. In Johnson v.
Wanamaker, 17 Pa. Superior Ct. 301, 305, Porter, J.,
uses these significant words:

"The law implies a promise to pay what services are
worth, when they are upon request performed and the
parties have not expressly agreed upon a rate of com-
pensation; but if the amount of compensation has been
agreed upon, or a rule adopted by which it is to be as-
certained, the law lets the contract stand as the parties
have made it. If the theory of the referee is sound all
express contracts must fall when they are sustained
by the testimony of but one witness and their existence
is by another witness denied. Such a rule might be a
convenient or even pleasant one for jurors or arbitra-
tors when the witnesses on the respective sides of such
a question were equal in number, for they might find
that all the witnesses had told the truth, although the
testimony was directly contradictory, and then go on
and dispose of the rights of the parties without regard
to the facts. If A sold a horse to B—and subsequently
brought an action—alleging the animal to be worth
$500 and admitting a payment of $100 upon account,
it would only be necessary for him to prove the delivery

of the horse and call witnesses who would swear that he was worth the amount stated, and when B testified that there was an express agreement of sale for $100 which had been paid, A having denied that any price had been agreed upon, the court would be required to charge the jury that if they were unable to decide as to the truth of the disputed question of fact A was entitled to recover what the horse was worth, less the amount actually paid. When the evidence is contradictory as to whether the parties have agreed upon the compensation which is to be paid for services, or for goods sold and delivered, there is no presumption of law that the contract as made was not complete in all its terms. The truth is to be determined from the evidence produced, as in any other disputed question of fact. The rights of these parties were dependent upon the facts out of which they grew. The facts were disputed, and until they were found the rights could not be ascertained."

In the case of Seibert v. Householder, 8 Sadler 576, plaintiff made a parol contract with defendant to do carpenter work on five houses. At the trial there was a conflict of evidence as to what the contract price was. When defendant offered to prove what the work which plaintiff did was worth, for the purpose of leading to the conclusion that defendant was more likely correct in his statement as to what the contract price was, the court below sustained the objection to offer proof and, upon appeal, the Supreme Court affirmed the ruling.

Here plaintiff alleged an oral contract under which, if the jury would have believed his testimony, he would have been entitled to all that he claimed. Landis, J., in Wolf v. Yeager's Execs., 20 Lanc. 67, in dealing with a like situation said: "If she failed to prove her contract because the defendants presented a different one which the jury believed, she cannot, nevertheless, under the pleadings, recover on a quantum meruit."

Here, according to plaintiff's story, as already pointed out, he was to receive for the doing of certain work, a definite and specific charge therefor, defendants, however, testifying that it was at a fixed and definite sum. Such a contract is perfectly legal and one which the parties could have entered into. Plaintiff, as already pointed out by the trial judge, was entitled to $1,796.68 if his story was believed. Unfortunately for him, it was not.

In Tuffree v. Steward, 80 N. W. 681 (Iowa), it was held: "Where plaintiff sued on a contract and a quantum meruit in separate counts, and defendant admitted the contract on the trial, it was error to submit the quantum meruit."

The contention that the verdict of the jury was against the weight of the evidence overlooks the fact that the burden of proving the alleged agreement as to price was on plaintiff, who averred that defendants agreed to pay various sums for the work to be done.

Plaintiff contends that defendants should be precluded from recovery because upon a number of occasions Mrs. Heilman signed slips which merely purported to show the number of hours plaintiff's employes were on defendants' job. The trial judge in his charge referred to this testimony. Even if it were so that the signing of these slips by Mrs. Heilman tended to support plaintiff's version of the agreement, it was for the jury to so determine. There was no explanation by either plaintiff or defendant as to the purpose of having slips signed and it is just as reasonable to conclude that the slips were required by plaintiff in order to have a record of what employes were working on the job and what length of time the employer would have to pay them, as it is to conclude that the purpose was to bind defendant to pay for the number of hours shown upon the slips, the hours they worked each day and the amount paid by plaintiff for their services.

Since the verdict is amply supported by testimony which was believed by the jury and the verdict does not shock our conscience, we cannot now disturb the same as being against the weight of the evidence.

And now, to wit, May 5, 1950, rule for new trial is discharged.